**BOWLES, Estate of, In Re: MORGAN et, Plaintiffs-Appellants, v. BOWLES, Heirs at Law, Defendants-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22564. Decided October 27, 1952.

44

Baker, Hostetler & Patterson, H. F. Burns, R. T. Sawyer Jr., A. P. Hadley, of Counsel, T. G. Thompson, Cleveland, Amerman, McHenry, Jones & Morgan, Canton, for plaintiffs-appellants.

Sayre, Vail & Steele, Pickrel, Schaeffer & Ebeling, Dayton, Wm. A. Finn, Toledo, Klein, Diehm & Farber, Cleveland, for defendants-appellees.

## OPINION

By HURD, J:

This cause comes before this Court at this time on a motion of the appellees for an order dismissing appellants' appeal on questions of law and fact from an order of Probate Court denying probate of a lost will and codicil, on the ground that said appeal does not invoke the chancery jurisdiction of this Court, and that, therefore, the appeal, of necessity, must proceed only in questions of law.

With commendable zeal, able counsel have filed voluminous briefs arguing for their respective positions on the issues raised by this motion.

For the purposes of this discussion only, we quote without affirming, the "Statement of Facts" contained in the original brief of appellants, as follows:

"Susan Harkness Bowles died resident of Cuyahoga County, Ohio, November 17, 1951. She had executed her Last Will and Testament November 9, 1946 and a codicil thereto August 17, 1948. Following her death the original of the will could not be found; the original codicil was found. An accurate copy of the original will, conformed at the time the will was executed, was produced and received in evidence. In the Probate Court Charles A. Morgan filed an application to probate the lost Last Will and Testament and the original codicil.

"After a hearing in which none of the parties interested in sustaining the will or codicil other than Mr. Morgan were represented by counsel, and of which certain of the parties so interested had neither notice nor knowledge, including Geraldine Hart Brooks and Dorothy E. Hart, appellants herein, the court denied probate of either the lost will or the original codicil. The court, however, specifically found these docu-

ments 'were duly executed and attested as a will and codicil thereto, respectively, by the said Susan Harkness Bowles, according to the provisions of law in force at the time of their execution, and that at the times of executing the same, the said Susan Harkness Bowles was of full age, of sound mind and memory and not under any restraint. * * *.' "

Miss Bowles in her will, so far as pertinent to the present problem provides as follows:

"In Item III, she gives household furniture, jewelry and like personal effects to Mr. Morgan, directing that he dispose of it to other persons and Item V she gives him $100,000.00.

"Item IV, 'to each person employed by me at the time of my death I give and bequeath One Hundred Dollars ($100.00) for each full year during which he or she shall have been employed by me.'

"Item VI devises the entire residue to the National City Bank of Cleveland, as trustee. Comprehensive powers of management are conferred. The trustee is directed to pay annuities from the net income and/or principal of the trust estate in sums ranging from $100.00 to $200.00 per month to the then named individuals, but since some persons so named only receive an annuity upon the death of another, and because some are in 'joint and survivorship' form, there are, in fact, only six annuities.

"Continuing, Miss Bowles directed that all of the net income of the trust not expended in paying annuities shall be paid to Western Reserve University in memory of her uncle, John Reynolds Harkness, and his wife, to 'maintain or assist in maintaining, a professorship at said University in some field, division or department of learning to be specified by its Board of Trustees. The name, 'John Reynolds Harkness' shall be used to identify said professorship, when reference is made to it, and I request that it be in the College of Arts and Sciences of said University.' "

The estate is inventoried at more than $600,000.00. Upon the payment of the Morgan legacy, there will remain a gross estate of nearly a half million dollars, which, subject to taxes and expenses, is to be held in perpetuity for charitable purposes, subject only to the annuities.

The codicil, the signed and duly executed original of which was presented and denied probate, reads in its entirety, except for formal introductory and closing paragraphs, as follows:

" 'Item I. In Item VI of my said Last Will and Testament, and especially on page 3 and 4 thereof, I named certain persons to whom I directed the Trustee of the residue of my estate to pay annuities from the net income and/or principal of the

trust estate in certain specified amounts, payment of each amount to begin on the first day of the first calendar month following my death.

" 'I now add to said list of persons, the name of Rose Tulley and direct said Trustee to pay to her a similar annuity, in the amount of Four Hundred Dollars ($400.00) per month, so long as she shall live. I make this provision for her, in addition to any amount which she may be entitled to receive pursuant to a general provision now in Item IV of my said Last Will.

" 'Item II. In all other respects, I hereby ratify and confirm my said Last Will and all the provisions thereof.' "

The Probate Court rendered no opinion * * * as to why the Court refused to admit the duly executed original codicil to probate, except for a single sentence in the journal entry which says,

" 'The Court finds that the codicil dated August 17, 1948, was so dependent upon the terms and provisions of said last will and testament that it cannot be probated alone as a new or independent will.' "

"Geraldine Hart Brooks and Dorothy E. Hart, two of the annuitants under the trust created by the will, knew nothing of the provisions made for them in the will until April 8, 1952, the time of the court's entering its order overruling the application to probate the will and codicil. They first engaged counsel subsequent to April 8, 1952. The facts herein stated with respect to the lack of notice, lack of representation, and exclusion, all appear of record in the transcript of the hearings of February 14, 1952, and April 8, 1952 and in the affidavits attached to the motions of the appellants for a new trrial, all of which motions were overruled by the Probate Court, April 30, 1952."

The single question here presented is whether, under the Constitution and laws of Ohio, appeals to this court from a denial of the admission to probate of lost, destroyed or spoliated wills are proceedings on questions of law and fact (chancery) or on questions of law only.

The procedure in such cases is defined by §§10504-35 to 10504-38 GC, inclusive. Sec. 10504-35 GC reads as follows:

"Lost, spoliated or destroyed wills may be admitted to probate: The probate court may admit to probate a last will and testament which it is satisfied was executed according to the provisions of law in force at the time of its execution, and not revoked at the death of the testator, when such original will was lost, spoliated or destroyed subsequent to the death of such testator, or after he became incapable of making a will by reason of insanity, or before the death of such testator, if testator's lack of knowledge of such loss, spoliation or destruc-

tion can be proved by clear and convincing testimony, and it cannot be produced in court in as full, ample and complete a manner as the court now admits to probate last wills and testaments, the originals of which are actually produced therein for probate."

**Sec. 10504-38 GC**, reads as follows:

"Lost, or spoliated wills may be probated how: If upon such proof, the court is satisfied that such last will and testament was executed in the mode provided by the law in force at the time of its execution, that its contents are substantially proved, that it was unrevoked at the death of the testator and has been lost, spoliated or destroyed since his death, or his becoming incapable as aforesaid; or before the death of the testator, if his lack of knowledge of such loss, spoliation or destruction can be proved by clear and convincing testimony, such court shall find and establish the contents of such will as near as can be ascertained and cause them and the testimony taken in the case to be recorded in such court."

Counsel for appellants argue that an action to probate a will is essentially and historically equitable in nature and therefore remains and partakes of the nature and benefits of a chancery action. They also argue that the "lost" will of decedent contained provisions for a testamentary charitable trust and that an action to establish, enforce, construe or terminate such a trust is equitable in nature and therefore requires that we consider this as a chancery case within the meaning of **Section 6, Article IV of the Constitution of Ohio.** They further argue that because the codicil requires the "trustee" to pay an annuity and no trustee being named therein, the probate court was presented with the question whether, as a court of general equitable jurisdiction, it should appoint a trustee so that the trust would not fail. They argue further that the probate court, in denying probate to the codicil, necessarily construed it and that since both the will and codicil create or involve trusts, the probate court in interpreting them, was exercising its chancery powers.

This court recently had occasion to pass upon the historical argument and related questions in the case of In re Estate of Miller v. Roberts, Admr., etc. No. 22447 in this Court of Appeals. In that case we decided (April 14, 1952) that the proceeding to probate a lost, spoliated or destroyed will, under the applicable provisions of the General Code above cited and quoted, is purely statutory in nature and necessarily a proceeding on questions of law alone which would include consideration of the degree of proof required by statute. In principle, we see no real distinction between the instant case and the

Miller case, on the single question here presented. In the Miller case, we had only the question of a partially destroyed or spoliated will, while here we have the question of an alleged lost will and an existing codicil thereto, as to both of which instruments the probate court denied admission to probate as set forth in the journal entries hereinbefore quoted in part.

We think that the assumed fact that the lost will creates a testamentary charitable trust, and that the codicil "requires the 'trustee' to pay an annuity" the trustee not being named, does not necessarily imply that the legal aspect of the proceedings is thereby changed from one of law to one of law and fact.

In our opinion, the character of a lost, destroyed or spoliated will, whether it be a simple will, or one containing trust provisions, does not operate to change the nature of the statutory proceeding, in which the proponents seek to cause it to be probated. In such case, the court does not look to the contents of the lost, destroyed or spoliated document, for the purpose of determining whether the same may be admitted to probate under the provisions of §10504-35, et seq., GC. The issue on this question is determined according to the applicable provisions of the Code upon the "proof" adduced upon hearing as to whether, to quote the statute, "such last will and testament was executed in the mode provided by law, in force at the time of its execution, that its contents are substantially proved, that it was unrevoked at the death of the testator, and has been lost, spoliated or destroyed since his death, or his becoming incapable, as aforesaid; or, before the death of the testator, if his lack of knowledge of such loss, spoliation or destruction, can be proved by clear and convincing testimony." (Sec. 10504-38 GC.)

The proof in such cases is derived from evidence of surrounding facts and circumstances relevant to the claims of loss, destruction or spoliation of sufficient quantum and quality to "satisfy" the court acting within the limits of sound discretion. We conclude, therefore, that the probate court was not required to "establish, enforce, construe or terminate a trust" nor was the probate court faced with the question of appointing a trustee "so that the trust would not fail" where, in pursuance of the applicable statutes, the court was not satisfied that documents containing such provisions should be admitted to probate.

Likewise, we think that the argument of appellants to the effect that the court in denying probate to the codicil and the will was necessarily construing and interpreting such instruments, and therefore exercising chancery powers, is un-

tenable. In relation to the codicil, the court, through its journal stated in substance that it (the codicil) was so dependent upon the terms and provisions of the alleged lost will, that it could not be probated alone as a "new and independent will." Item I of the codicil refers particularly to Item VI of said lost will and adds the name of a life beneficiary as an annuitant. It should be emphasized that we are not here deciding any questions pertaining to the merits of the case, and therefore we expressly disclaim any opinion as to whether or not the court erred in its conclusion in this respect. We simply declare that in determining the question, the trial court was not called upon to exercise chancery jurisdiction.

We have also given attention to the asserted claim that certain of the interested parties were not properly notified of the proceedings by reason whereof it is alleged they were deprived of an opportunity to be present and be represented at the hearing. These matters present questions of law only, which if properly raised, may be considered if the cause comes to this court for trial on the merits.

The appellants, in addition to other arguments presented, have urged that the doctrine of dependent relative revocation applies in this case. It is argued that this doctrine is one of equitable origin where a testator revokes a will because he believes that another testamentary disposition of his is effective, when in fact it is not, and that in such cases a court of equity will not suffer the revocation to stand. Appellees, on the other hand, contend that this is an English doctrine "which is not the law in Ohio, nor in this country, and that it is not involved in this appeal, as it was not invoked or even referred to by the proponents before the probate court, and if arguable at all, it goes to the merits and not the nature of the appeal which is statutory and not equitable."

At this stage of the case we do not have the benefit of either a transcript of the evidence or a bill of exceptions, but assuming the facts as presented by appellants as set forth in their original brief, we are of the opinion that the doctrine of dependent relative revocation has no application. Furthermore, we are in accord with the contention of the appellee that this doctrine, if arguable at all, must be considered in relation to the merits of the case and not to the nature of the appeal which we conceive to be purely statutory.

We emphasize the proposition that the probate court, as well as this court, must be governed, in these special proceedings, by the applicable provisions of the General Code, and that deviation therefrom may not have judicial sanction.

The appellants have cited, among others, the following cases: **Myers v. City of Defiance, 67 Oh Ap 159** (an action for declaratory judgment in common pleas court where the relief prayed for affirmatively was equitable in nature); **Sowers v. Cyrenius, 39 Oh St 29** (an action originating in common pleas court for the construction of a will containing a charitable trust); **Gearhart v. Richardson, 109 Oh St 418** (an action originating in common pleas court to construe a will creating a charitable trust); **Palmer v. Oiler Exr., 102 Oh St 271** (an action arising in this county to construe a will containing a valid testamentary charitable gift).

These cases bear no close analogy to the instant case on the issue here presented. In the matter of the construction of wills it is clear that the same had already been admitted to probate and contained charitable or trust provisions which naturally invoke the jurisdiction of a court of equity. In the Myers case, supra, the dominant relief prayed for being injunction, was clearly equitable in nature.

Appellants appear to rely strongly upon the case of **Wagner v. Armstrong, 93 Oh St 443** which originated in the common pleas court and was an action praying for partition of certain real estate and accounting for rents and profits. The court there held in substance that all partition cases being originally cognizable in courts of chancery only, must still be regarded as chancery cases and therefore appealable under such terms and procedures as may be provided by law. From this it is argued that an action to probate a will in the probate court was historically an equitable action and therefore remains and partakes of the nature and benefits and appealable rights of a chancery action. This argument is clearly untenable by reason of the holding in the early case of **Morningstar v. Selby, 15 Oh St 345** decided in 1846, commented upon at length in appellees' brief, the first paragraph of the syllabus reading:

"1. A court of chancery cannot entertain jurisdiction to set up or establish a lost or destroyed will and testament"

It is our view that this case disposes of the contention that a proceeding to probate a copy of a lost, spoliated or destroyed will was historically a chancery action now appealable on law and fact.

In addition to the Morningstar case, supra, and the case of In re Estate of Miller v. Roberts, supra, we cite, but do not discuss, the following cases which, by analogy, are persuasive of our conclusion herein.

**Missionary Society of M. E. Church v. Ely et al., 56 Oh St 405.**
**In re Estate of Gurnea, 111 Oh St 715.**
**Squire, Supt. etc. v. Bates, 132 Oh St 161.**

We hold, therefore, that in Ohio proceedings to admit to probate lost, spoliated or destroyed wills are purely statutory in nature and that irrespective of the contents of such documents, appeals to this court from a denial of the admission thereof to probate, are not equitable in nature and therefore, do not invoke the chancery powers of this court, requiring trials "de novo."

For the reasons stated, the motion to dismiss the appeal on questions of law and fact will be granted, the case to be retained on questions of law, and appellants will be given a period of thirty days within which to file a bill of exceptions, in pursuance of §§12223-22 and 11564 GC.

Judgment accordingly. Exceptions.

SKEEL, PJ, concurs.
THOMPSON, J, not participating.

(Note): The question here presented being one of law, counsel have agreed to submit the issue to two judges.